* * * * * * * * * * *
The Full Commission reviewed the prior Opinion and Award, based upon the record of the proceedings before the Deputy Commissioner and the briefs and argument before the Full Commission. The appealing party has not shown good grounds to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award. Accordingly, the Full Commission affirms, with modifications, the Opinion and Award of the Deputy Commissioner.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act. *Page 2 
2. An employer-employee relationship existed between defendant and plaintiff.
3. The carrier liable on the risk is correctly named.
4. Plaintiff's average weekly wage is sufficient for a compensation rate of $654.00.
5. The date of the alleged injury was on or about August 7, 2002.
 * * * * * * * * * * * ISSUES
Did plaintiff sustain a compensable injury to his neck arising out of and in the course of his employment and if so, to what benefits is he entitled?
Did plaintiff's neck problems arise as a result of an unrelated equipment failure from a preexisting condition and surgery?
Would that equipment failure have occurred but for the interceding accident of August 8, 2002?
 * * * * * * * * * * * EXHIBITS
The following documents were received into evidence:
 1. Stipulated Exhibit #1 — Medical Records
 2. Depositions: Dr. John A. Welshofer and Dr. Coric
 * * * * * * * * * * *
Based upon the competent evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of hearing before the Deputy Commissioner, plaintiff was forty years old. He had graduated from high school and had taken college courses in electrical installation *Page 3 
and maintenance as well as other college courses. Plaintiff worked for defendant as a first call lineman, being responsible for replacing poles and working on power lines.
2. On March 10, 2000, Dr. Richard Greenberg, a neurosurgeon, performed a cervical fusion on plaintiff at C5-6 and C6-7 for non-work related issues. Plaintiff returned to work on May 15, 2000 as a lineman for defendant with no restrictions and no disability. At the hearing before the Deputy Commissioner, plaintiff testified that he had not experienced any discomfort or problems with his neck after his surgery in 2000.
3. On August 8, 2002, plaintiff was injured at work when he fell twenty feet to the ground from a pole. At the hearing before the Deputy Commissioner, plaintiff testified that he experienced pain in his neck, lower back, arms, hands and legs and headaches. After reporting his injury to the radio dispatcher, plaintiff sought medical care at a nearby clinic that referred him to Dr. Greenberg.
5. Dr. Greenberg ordered cervical and lumbar MRI scans, which were performed on August 28, 2002. According to Dr. Greenberg, the cervical MRI scan looked fairly unremarkable with the exception of some metal artifact from the screws and plates previously placed. The lumbar spine MRI scan was also relatively normal. There was a disc bulge on the right at L5-S1 that Dr. Greenberg opined might be causing the burning plaintiff felt in his feet. Dr. Greenberg prescribed physical therapy and L5-S1 epidural steroid injections.
6. On October 9, 2002, Dr. Greenberg released plaintiff to return to work the following day, October 10, 2002, with no restrictions.
7. At the hearing before the Deputy Commissioner, plaintiff testified that the pain in his neck and back never really stopped and in fact, continued to worsen. The Full Commission finds plaintiff's testimony to be credible. *Page 4 
8. On March 18, 2003, plaintiff presented to Dr. Greenberg with complaints of low back pain, neck pain and right upper extremity numbness, tingling and weakness.
9. As a result of plaintiff's continued complaints of pain, on March 31, 2003, Dr. Greenberg ordered a myelogram of the entire spine, a CT of the lumbar spine and a CT of the cervical spine to be performed. The results were "Prior C5, C6, C7 fusion with mild canal stenosis at C5-6. Foraminal narrowing on the right from uncovertebral joint hypertrophy at C5-6, questionable indentation on nerve root on myelographic images at this location. Broken screw on the right at C5."
10. On April 8, 2003, plaintiff again presented to Dr. Greenberg with complaints of neck pain, back pain and tingling in his fingers and toes bilaterally. Dr. Greenberg referred plaintiff to The Pain Center for management of his post-traumatic pain and other symptoms as no major disc herniations or nerve roots cuts were apparent in the diagnostic testing.
11. Dr. Greenberg continued to treat plaintiff conservatively with epidural steroids, physical therapy, muscle relaxants and pain medication but his symptoms did not significantly improve.
12. On June 25, 2003, plaintiff returned to see Dr. Greenberg who ordered a discogram of his lumbar spine that revealed findings of disc protrusion or herniation at lumbar L5-S1. Based on these findings, Dr. Greenberg recommended a discectomy at L5-S1.
13. On August 15, 2003, plaintiff underwent a right-sided microdiscectomy at L5-S1 for a herniated disc; however, Dr. Greenberg noted that if the disc repair did not relieve plaintiff's back pain, a fusion might be reasonably necessary. For the next ten months, plaintiff went through pain clinic treatment, work hardening, and an attempt to return to work; however, his condition continued to deteriorate and he experienced pain in his back and down both legs. A *Page 5 
repeat MRI scan carried out on February 7, 2004, revealed "L5-S1 severe right intervertebral forminal stenosis secondary to a broad based disc protrusion and unilateral facet joint arthrosis." As a result, Dr. Greenberg recommended an L5-S1 fusion. Dr. Greenberg noted that plaintiff is severely depressed as a result of his pain and medical condition and needs psychological counseling. Dr. Greenberg also referred plaintiff to the Gaston Memorial Hospital Pain Center before the surgery for a pain consultation to help with plaintiff's post-operative recovery.
14. On March 26, 2004, Dr. Greenberg performed bilateral hemilaminectomies and recurrent discectomies at L5-S1. After the surgery, plaintiff underwent a work hardening program and treatment for pain management. On January 19, 2005, Dr. Greenberg released plaintiff to light duty with minimal bending and lifting up to 10 pounds. Dr. Greenberg rated plaintiff with a 25% disability as a result of his work-related fall and subsequent two surgeries.
15. On June 2, 2005, plaintiff presented to Dr. Steven K. Gudeman, a neurologist, with complaints of increasing pain in the neck, back and shoulder. Dr. Gudeman reviewed cervical spine films and opined that while there was no evidence of radiographic instability, a darkness of the disc at C4-5 and a slight increased angulation raised a question of possible pseudofusion at this level.
16. In a June 28, 2005, letter, Dr. Tonya K. Powers with The Pain Center in Gastonia, North Carolina, reported that she had the opportunity to place plaintiff under x-ray and found that his cervical fusion plate had been fractured. Dr. Powers opined that considering the amount of trauma and force there would have to be to fracture one of these metal plates, she had "no doubt that it is related to the significant fall that Mr. Almond suffered while at work."
17. On September 16, 2005, plaintiff presented to Dr. Dom Coric, a board-certified neurosurgeon. Dr. Coric testified that he had reviewed all plaintiff's x-ray and radiological *Page 6 
studies as well as the medical reports prior to and after the accident. Dr. Coric noted that prior to plaintiff's fall on August 8, 2002, x-rays revealed intact instrumentation but after the fall, diagnostic testing revealed a broken screw and subsequently a broken plate. Dr. Coric explained that rods, screws and plates are meant to function as an internal cast to hold things together long enough for bone to grow. If there is a failure of fusion or something interrupts the bone growth, the instrumentation will begin to fail; however, according to Dr. Coric, "it won't fail by itself generally." According to Dr. Coric, you can start with a broken screw, which will progress to a broken plate and ultimately lead to failure of the entire construct. Dr. Coric gave an opinion to a reasonable degree of medical certainty that regardless of the underlying condition, plaintiff became symptomatic with the twenty-foot fall and that the fall was the precipitating factor for plaintiff's clinical presentation. Dr. Coric further opined that plaintiff's twenty-foot fall was the proximate cause of the instrumentation failure, at least as far as the screw breakage, since the x-rays revealed the instrumentation to be intact before the fall, but not afterwards and plaintiff only became symptomatic after the fall.
18. Dr. Coric opined that it was medically necessary to remove and replace the broken instrumentation because of plaintiff's persistent neck and arm pain and numbness as well as the failure of the prior fusion and instrumentation that was clearly revealed by the imaging studies.
19. On November 29, 2005, Dr. Coric performed an anterior cervical discectomy and decompression with removal and reinsertion of the anterior plate at C5 through C7 and with structural allograft at C5-6 and C6-7. His findings were "broken anterior plate with plate breakage as well as screw breakage at C-5, C-6 and C-7 with failed fusion at C5-6 and C6-7 with fibrous union only." *Page 7 
20. Dr. John Welshofer, a physical medicine and rehabilitation specialist, examined plaintiff for an independent medical examination. Although in his deposition testimony Dr. Welshofer originally opined that plaintiff was not a candidate for further surgery, he later deferred to Dr. Coric regarding an opinion about the necessity for further surgery as he (Dr. Welshofer) was not a surgeon. Dr. Welshofer stated that from a research standpoint, Dr. Coric is one of the top neurosurgeons in the country.
21. Dr. Gudeman, a neurologist, opined that the instrumentation failure was a direct result of the twenty-foot fall that plaintiff sustained while at work.
22. Based on the medical evidence of record, the Full Commission finds that plaintiff's twenty-foot fall while performing his work duties was the proximate cause of the failure of the instrumentation in his neck. The Full Commission further finds that plaintiff's surgery performed by Dr. Coric on November 29, 2005 was necessary due to his work-related accident on August 8, 2002 and was reasonably required to effect a cure, give relief and lessen plaintiff's period of disability.
23. Defendant had reasonable grounds upon which to defend this claim.
 * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. On August 8, 2002, plaintiff sustained an injury by accident arising out of and in the course of employment with the defendant when he fell twenty feet at work injuring his neck, back, and legs. N.C. Gen. Stat. § 97-2(6). *Page 8 
2. Where the exact nature and probable genesis of a particular type of injury involves complicated medical questions far removed from the ordinary experience and knowledge of laymen, only an expert can give competent opinion evidence as to the cause of the injury. Click v.Freight Carriers, 300 N.C. 164, 265 S.E.2d 389(1980). The greater weight of the medical evidence revealed that as a result of and causally related to his August 8, 2002 injury by accident, plaintiff sustained injury to his cervical spine that necessitated the November 29, 2005 surgery. N.C. Gen. Stat. § 97-2(6).
2. Plaintiff is entitled to have defendant provide all medical expenses incurred or to be incurred as a result of his compensable injury, including repair of his cervical fusion, as may be reasonably required to effect a cure, provide relief or lessen the period of disability. N.C. Gen. Stat. §§ 97-2(19) and 97-25.
 * * * * * * * * * * *
Based upon the foregoing stipulations, findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Plaintiff is entitled to have defendant provide all medical expenses incurred or to be incurred as a result of his compensable injuries, including repair of his cervical fusion, as may be reasonably required to effect a cure, provide relief or lessen the period of disability.
3. Defendant shall pay the costs.
This the __ day of June 2007.
S/___________________________ PAMELA T. YOUNG COMMISSIONER *Page 9 
CONCURRING:
 S/___________________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
 S/___________________________ CHRISTOPHER SCOTT COMMISSIONER *Page 1